## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | | |
|---|---|---|
| JOHN THOMAS SHIPLEY,<br>Reg. No. 47666-280,<br>    Movant,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br>    Respondent. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | EP-15-CV-190-PRM<br>EP-09-CR-1867-PRM-1 |

## MEMORANDUM OPINION AND ORDER

On this day, the Court considered Movant John Thomas Shipley's *pro se* "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody" (ECF No. 233)[1] [hereinafter "Motion"], filed on June 19, 2015, the United States of America's (the "Government") "Response to Motion to Vacate Sentences" (ECF No. 246), filed on October 21, 2015, and Movant's "Reply to United States' Response to Motion to Vacate Sentences" (ECF No. 251) [hereinafter

---

[1] "ECF No." refers to the Electronic Case Filing number for documents docketed in EP-09-CR-1867-PRM-1.   Where a discrepancy exists between page numbers on filed documents and page numbers assigned by the ECF system, the Court will use the latter page numbers.

"Response"], filed on January 4, 2016, in the above-captioned cause. Movant challenges the sentences the Court imposed in his case after a jury found him guilty of illegally dealing firearms without a license, causing a firearms dealer to maintain false records, and making a false statement. After reviewing the record and for the reasons discussed below, the Court concludes that Movant has failed to establish that he is entitled to § 2255 relief. Accordingly, the Court will deny his Motion and dismiss his civil cause with prejudice. Additionally, the Court will deny him a certificate of appealability.

## I. BACKGROUND AND PROCEDURAL HISTORY

A jury found Movant, a former Federal Bureau of Investigations ("FBI") Special Agent, guilty of violating certain federal firearms laws.[2] Federal law prohibits "any person, except a licensed dealer, from engaging in the business of dealing in firearms."[3] A person engages in the business of dealing in firearms when he:

---

[2] Verdict, Apr. 14, 2016, ECF No. 61 [hereinafter "Verdict"].

[3] *United States v. Burke*, 577 F. App'x 338, 340 (5th Cir. 2014) (quoting 18 U.S.C. § 922(a)(1)(A)).

> devotes time, attention, and labor to dealing in
> firearms as a regular course of trade or business
> with the principal objective of livelihood and profit
> through the repetitive purchase and resale of
> firearms, but such term shall not include a person
> who makes occasional sales, exchanges, or
> purchases of firearms for the enhancement of a
> personal collection or for a hobby, or who sells all
> or part of his personal collection of firearms . . . .[4]

When a lawfully licensed dealer sells a firearm, the dealer and the buyer must record the transaction on Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") Form 4473.[5]   Form 4473 requires the purchaser to certify that he is the "actual buyer" of the firearm, and warns that a false statement "is a crime 'punishable as a felony under Federal law.'"[6] Federal law also requires the holder of a Federal Firearms License ("FFL") to maintain "Acquisition and Disposition" ("A&D") record books to record information about transactions involving firearms and certain ammunition.[7]

---

[4] 18 U.S.C. § 921(a)(21)(C).

[5] *Abramski v. United States*, 134 S. Ct. 2259, 2263 (2014).

[6] *Id.* at 2264 (quoting 18 U.S.C. § 924(a)(1)(A)).

[7] 18 U.S.C. § 923(g)(1)(A); 27 C.F.R. § 478.125.

Evidence presented at Movant's trial established that he collected firearms as a hobby.[8]   In early 2005, he sold a substantial portion of his personal firearm collection to finance the cost of adopting a child.[9] Although Movant never obtained a FFL to deal in firearms, these occasional sales from his personal collection were lawful.[10]   Shortly thereafter, however, Movant began dealing in the repetitive purchase and resale of firearms as a regular side business to supplement his income as an FBI agent.[11]   On at least four occasions, Movant purchased a firearm, certified on a Form 4473 that he was the "actual buyer" of the firearm, then almost immediately sold the firearm to a third party.[12]

During a separate investigation, an ATF Special Agent ("Agent")[13]

---

[8] *See United States v. Shipley*, 546 F. App'x 450, 452 (5th Cir. 2013), *cert. denied*, 134 S.Ct 2842 (2014).

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] *Id.* at 455.

traced a Barrett .50 caliber rifle (#20488) back to Movant.[14]  This particular rifle was seized by the Mexican military at the scene of a shootout in Chihuahua, Mexico, which resulted in the death of a Mexican Army captain and six suspected drug cartel members.[15]  When the Agent contacted Movant to obtain further information, Movant claimed that he had sold the rifle and two other firearms to Luis Armando Rodriguez, a deputy sheriff in El Paso County, Texas.[16] Movant also voluntarily provided an A&D—which FFL dealers are required to maintain—with four pages of recorded sales, including the three sales to Rodriguez.[17]  Movant told the Agent that the A&D book reflected all of his sales transactions from 1996 to the present.[18]  A comparison between Movant's records and records maintained by Paul

---

[13] Hereinafter, all unnamed ATF and FBI Special Agents will be referred to as "Agent" or "Agents."

[14] Mot. 13; Resp. Ex. A1, at 110–11.

[15] *Id.*

[16] *Shipley*, 546 F. App'x at 452–53.

[17] *Id.* at 453.

[18] *Id.*

Lee, a FFL dealer at Collector's Gun Exchange in El Paso, Texas, from whom Movant purchased weapons, revealed that Movant had purchased fifteen firearms not listed in his personal records.[19]

Several months later, Eric S. Benn, a Senior Special Agent with the Department of Justice, Office of the Inspector General, submitted an application and affidavit for a search warrant to search Movant's residence and motor vehicles.[20]   Benn claimed that he had probable cause to search Movant's residence and motor vehicles based on the following:

> - [Movant] when questioned concerning his purchases of firearms, he provided ATF agents with false documents because the record book [Movant] produced only listed the acquisition of thirty-two (32) firearms, when a review of one single FFL's records in El Paso, Texas alone revealed that [Movant] had purchased thirty-four (34) firearms between October 31, 2005 and March 8, 2007.   A conservative estimate of the dollar value of those firearms alone is at least eighty five thousand dollars ($85,000.00).   [Movant] did not include in his purported record book approximately fifteen

---

[19] Resp. Ex. A-6 (Aff. in Supp. of Search Warrant), at 8.

[20] *Id.*

(15) firearms that a review of the A&D book of local FFL show were transferred to him during the relevant time period.

- [Movant], without a FFL, resold some of the firearms he ordered or bought shortly after acquiring them, including at least one sale on the same day that he received the firearm and in another instance receiving payment for a firearm before [Movant] received the firearm himself.

- When [Movant] completed the ATF Form 4473 and indicated that he was the "actual purchaser" of the firearm, that information was incorrect and in fact on at least those occasions described herein, he was not the actual purchaser, he was acquiring the firearms for others, thus causing the FFL to maintain false records.

Your affiant believes that probable cause exists to believe that evidence that [Movant] is Dealing Firearms without a License in violation of 18 USC Section 922(a)(1)(A), Causing an FFL to maintain False Records in violation of 18 USC Section 922(a)(6), Conspiracy in violation of 18 USC Section 371, False Statements in violation of 18 USC Section 1001 and Destruction, Alteration, or Falsification of Records in Federal Investigations in violation of 18 USC Section 1519 is currently contained in the premises . . . .[21]

---

[21] *Id.*

After a United States Magistrate Judge reviewed the affidavit and authorized a search of Movant's residence, Agents recovered a second A&D book which purported to cover the same period from 1996 to the present.[22]   However, this second A&D book listed a number of additional sales, including the sale of armor-piercing and incendiary ammunition.[23]   According to the government's expert witness, the first A&D book, which Movant provided to the Agents, was written in a single sitting with the same pen, and the second A&D book, which Agents discovered during the search, was written during numerous sittings and with different pens.[24]   The search uncovered additional records on Movant's home computer listing approximately twenty-two firearms sales, as well hundreds of pages of email correspondence and photographic images relating to firearm transactions.[25]   The Agents also found a number of firearms in Movant's residence, several of which

---

[22] *Shipley*, 546 F. App'x at 453.

[23] *Id.*

[24] *Id.*

[25] *Id.*

were not mentioned in either of his A&D books.[26]   Many of the weapons were mass-produced and were not likely part of a personal collection.[27] The Agents also uncovered hundreds of bullets, thousands of dollars in cash, and a number of postal-service records and other items indicating that Movant had shipped firearms through the mail.[28]

A grand jury returned a six-count indictment charging Movant with illegally dealing firearms without a license, in violation of 18 U.S.C. § 922(a)(1)(A) ("count one"); causing a firearms dealer to maintain false records, in violation of 18 U.S.C. § 924(a)(1)(A) ("counts two through five"); and making a false statement in a matter within the jurisdiction of the federal government, in violation of 18 U.S.C. § 1001(a)(3) ("count six").[29]   Notably, the grand jury did not charge Movant with illegally exporting firearms.[30]

_____

[26] *Id.*

[27] *Id.*

[28] *Id.*

[29] Indictment, June 24, 2009, ECF No. 3.

Movant pleaded not guilty, and his jury trial lasted eight days.[31] The Government called sixteen witnesses and the defense called twelve witnesses, including Movant.[32]   The Court admitted into evidence 130 government exhibits, including numerous firearms, and more than 2,300 pages of documents.[33]   The Court also admitted into evidence more than 150 defense exhibits.[34]   After hearing the testimony and reviewing the evidence, the jury found Movant guilty on all six counts of the indictment.[35]

With a total offense level of twenty-two and a criminal history category I, Movant's advisory guidelines sentencing range was forty-one to fifty-one months' imprisonment.   The Court sentenced Movant below the guidelines range to twenty-four months' confinement because of the

---

[30] *See id.*

[31] *Shipley*, 546 F. App'x at 452.

[32] *See* Trial Trs. Vols. 3–9, Dec. 3, 2010, ECF Nos. 119–25.

[33] *See id.*

[34] *See id.*

[35] Verdict.

-10-

nature and circumstances of the offenses and "the history and characteristics of the defendant."[36]

On direct appeal, Movant maintained that the Fifth Circuit Court of Appeals should set aside his convictions for five reasons:

> [1] the transcript for one day of the eight-day trial
> [wa]s missing, thus frustrating adequate
> appellate review; [2] there was insufficient
> evidence at trial to support the convictions; [3] the
> statute criminalizing conduct that causes a lawful
> firearms dealer to maintain false records should
> be declared unconstitutionally void for vagueness;
> [4] the district court abused its discretion in
> excluding a witness's testimony relating to [his]
> good character and in refusing to instruct the jury
> on such character evidence; and, [5] the
> government's prosecutor made improper
> statements at trial.[37]

First, the Fifth Circuit rejected Movant's argument regarding the missing transcript because it accepted the Court's reconstruction of the missing record and found it sufficient for appellate review "[b]ecause there ha[d] not been a showing of intentional falsification or plain

---

[36] Statement of Reasons 3, Aug. 25, 2010, ECF No. 98 (sealed).

[37] *Shipley*, 546 F. App'x at 452.

unreasonableness."[38]   Second, the Fifth Circuit similarly rejected Movant's argument regarding the sufficiency of the evidence, finding that the evidence presented at trial, "viewing [it] in the light most favorable to the verdict," was sufficient to support the convictions.[39] Third, the Fifth Circuit concluded that Movant's "void-for-vagueness claim [was] without merit."[40]   Fourth, the appellate court concluded that the purported character witness "did not have sufficient familiarity with [Movant] to offer an opinion about his character."[41]   Finally, it did "not believe that any of the challenged statements [by the prosecutor] were improper ones sufficient to warrant reversal under plain error review"—thus rejecting Movant's fifth and final argument.[42]   Hence,

---

[38] *Id.* at 454.

[39] *Id.* at 454–55 (quoting *United States v. Ragsdale*, 426 F.3d 765, 770–71 (5th Cir. 2005)).

[40] *Id.* at 456.

[41] *Id.* at 457.

[42] *Id.* at 458.

The Fifth Circuit affirmed Movant's convictions.[43]

The Supreme Court denied Movant's petition for a writ of certiorari.[44]   Movant subsequently filed this § 2255 Motion, asserting the following nine grounds for relief:

(1) the trial judge was not impartial and should have recused himself;

(2) the court reporter lost a full day of the trial transcript, thus frustrating adequate appellate review of his case;

(3) the prosecution sought and received a remand from the Fifth Circuit to give the trial court an opportunity to reconstruct the missing transcript, but the trial court merely summarized what it believed had occurred on that day;

(4) the prosecution falsely implied to the jury that Movant was responsible for the Barrett .50 caliber rifle ending up in Mexico, when the Government . . . allowed the weapon to cross the border as a part of a "gunwalking" operation;

(5) various individuals with the Department of Justice, the Office of the Inspector General, the United States Attorney's office ("USAO"), and the ("ATF") conspired to obstruct justice when they asked an agent without knowledge of the "gunwalking"operation to prepare the affidavit for a warrant to search Movant's residence;

(6) the prosecutors intentionally lied to the trial court and the jury

---

[43] *Id.* at 458.

[44] *Shipley v. United States*, 134 S.Ct. 2842 (2014).

-13-

in order to obstruct justice and convict an innocent person;

(7) the Government destroyed exculpatory evidence, specifically his personal journals, which showed that he contacted . . . Agents to ensure that his purchases and sales of weapons complied with federal laws;

(8) the Government violated his due process rights by destroying his journals; and

(9) his trial counsel provided constitutionally ineffective assistance by failing to inform Movant of his professional and personal relationship with an ATF informant, impeach a prosecution witness, subpoena witnesses for trial, or ask the trial judge to recuse himself.[45]

## II.   LEGAL STANDARD

A § 2255 motion "provides the primary means of collateral attack on a federal sentence."[46]   Relief pursuant to § 2255 is warranted for errors that occurred at trial or at sentencing.[47]   Before a court will

---

[45] Mot. Attach. 1–24, June 19, 2015, ECF No. 233-1 [hereinafter Letter to the Court].

[46] *Pack v. Yusuff*, 218 F.3d 448, 451 (5th Cir. 2000) (internal quotations).

[47] *See Cox*, 911 F.2d at 1114 (5th Cir. 1990) ("The district court's dismissal of these grounds clearly was proper because they concerned alleged errors that occurred at sentencing and, therefore, may be remedied under section 2255."); *Ojo v. INS*, 106 F.3d 680, 683 (5th Cir. 1997) ("Because all of the errors Ojo alleges [occurred before or during sentencing], they must be addressed in a § 2255 petition, and the only

grant relief pursuant to § 2255, the movant must establish that "(1) his sentence was imposed in violation of the Constitution or laws of the United States, (2) the sentencing court was without jurisdiction to impose the sentence, (3) the sentence was in excess of the maximum authorized by law, or (4) the sentence is otherwise subject to collateral attack."[48]   Ultimately, the movant bears the burden of establishing his claims of error by a preponderance of the evidence.[49]   "If it plainly appears from the motion . . . and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion . . . ."[50]   If a court finds that the movant is entitled to relief, it "shall vacate and set the judgment aside and shall discharge the prisoner or

---

court with jurisdiction to hear that is the court that sentenced him."); *Solsona v. Warden, F.C.I.*, 821 F.2d 1129, 1131 (5th Cir. 1987) (explaining that, because the defendant's claims attacked the constitutionality of his conviction and proof of his claims would undermine the validity of his conviction, his exclusive initial remedy was a motion under § 2255).

[48] *United States v. Seyfert*, 67 F.3d 544, 546 (5th Cir. 1995) (internal citations omitted).

[49] *Wright v. United States*, 624 F.2d 557, 558 (5th Cir. 1980) (citing *United States v. Kastenbaum*, 613 F.2d 86, 89 (5th Cir. 1980)).

[50] 28 U.S.C. foll. § 2255 Rule 4(b); *see also* § 2255(b).

resentence him or grant a new trial or correct the sentence as may appear appropriate."[51]   Thus, the Court has "'broad and flexible power . . . to fashion an appropriate remedy.'"[52]

With these principles in mind, the Court turns to the merits of Movant's claims.

## III.   ANALYSIS

### A.   Ground One: Trial Judge's Failure to Recuse Himself

Movant first asserts that the trial judge, United States District Judge David Briones, was not impartial and should have recused himself.[53]   Specifically, Movant claims that the trial judge was acquainted with Movant because of Movant's employment as an FBI

---

[51] § 2255(b).

[52] *United States v. Stitt*, 552 F.3d 345, 355 (4th Cir. 2008) (quoting *United States v. Hillary*, 106 F.3d 1170, 1171 (4th Cir. 1997)); *see also Andrews v. United States*, 373 U.S. 334, 339 (1963) ("[T]he provisions of the statute make clear that in appropriate cases a § 2255 proceeding can also be utilized to provide a . . . flexible remedy."); *United States v. Torres-Otero*, 232 F.3d 24, 30 (1st Cir. 2000) ("As an initial matter, we note the broad leeway traditionally afforded district courts in the exercise of their § 2255 authority . . . . This is so because a district court's power under § 2255 'is derived from the equitable nature of habeas corpus relief.'") (quoting *United States v. Handa*, 122 F.3d 690, 691 (9th Cir. 1997)).

[53] Letter to the Ct. 1.

-16-

Special Agent.[54]   Movant further claims that Judge Briones was aware that Movant had worked on the FBI public corruption investigation "Operation Poisoned Pawns" ("OPP") targeting Judge Briones's sister, former El Paso County Judge Dolores Briones.[55]   Movant also asserts that his trial, over which Judge Briones presided, occurred while Judge Briones's sister was under FBI investigation and indictment.[56]

"The right to a fair and impartial trial is fundamental to the litigant; fundamental to the judiciary is the public's confidence in the impartiality of our judges and the proceedings over which they preside."[57]   "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."[58]

---

[54] *Id.*

[55] *Id.*

[56] *Id.*

[57] *United States v. Jordan*, 49 F.3d 152, 155 (5th Cir. 1995).

[58] § 455(a).

According to an affidavit prepared by the principal case Agent in charge of the OPP investigation, FBI Agents first notified Dolores Briones of the investigation during a phone conversation on May 18, 2007.[59]   During a subsequent interview in Austin, Texas, on April 9, 2010, Dolores Briones confessed to criminal wrongdoing.[60]   Meanwhile, the jury in Movant's case found him guilty five days later, on April 14, 2010.[61]   Nearly eighteen months later, on November 21, 2011, Dolores Briones learned that prosecutors would charge her with a federal crime.[62]   On December 9, 2011, Dolores Briones pleaded guilty to an information.[63]   She was sentenced over a year later on March 27, 2013.[64]

---

[59] Resp. Ex. A8, at 1, Oct. 21, 2015, ECF No. 246-8 [hereinafter "Affidavit of Julio Cordero"].

[60] *Id.*

[61] Verdict 1.

[62] Aff. Julio Cordero at 1.

[63] Min. Entry Proceedings, Sealed Re-arraignment, *United States v. Briones*, EP-11-CR-2962-FM (W.D. Tex. Dec. 9, 2011).

[64] J., *United States v. Briones*, EP-11-CR-2962-FM (W.D. Tex. Mar. 27,

-18-

The principal case Agent in charge of the OPP investigation claimed that Movant's role in the operation was minimal and did not involve Dolores Briones:

> [Movant's] role in that investigation was minimal and did not concern Dolores Briones. [Movant] was not one of the few specially-authorized agents who had access to OPP investigative files; he had no role in and was not privy to prosecution decisions growing out of the OPP investigation; and he had no role in and did not participate in the prosecution of any of the defendants charged as a result of the OPP investigation.[65]

Movant's trial attorney claims that he did not know, at the time he represented Movant, that the FBI was investigating Dolores Briones:

> In his § 2255 motion, [Movant] claims that he "instructed" me "to ask the judge to recuse himself because the judge's sister was investigated and indicted on a case [Movant] worked in the FBI." [Movant] never told me that he had worked on an investigation against the Judge's sister.   In fact he told me that he was part of a special surveillance team.   He never said he was part of the white collar prosecution team.   [Movant] did ask if there was a basis to recuse Judge Briones because the Judge was leaning hard on the defense; however, at no time at or before

2013).

[65] Aff. Julio Cordero at 1.

[Movant's] sentencing did I have a legitimate
basis to request the trial judge's recusal.

[Movant] did not advise me that he had any role
in the FBI investigation of Judge Briones' sister,
Dolores Briones, and I had no information
suggesting either that Judge Briones or Dolores
Briones was aware that Dolores Briones was
being prosecuted by the FBI.   There were rumors
of a possible investigation of Dolores Briones, but
I had no information suggesting that there was in
fact a case against her, and at that time I did not
have anywhere near sufficient information to in
good faith file a motion with a sitting federal
judge suggesting that he was biased against
[Movant].   This was clearly communicated to
[Movant].

I have since learned that Dolores Briones was
charged with federal criminal conduct in
December 2011, more than one year after
[Movant's] sentencing.   At no time at or before
[Movant's] sentencing did [Movant] or anyone else
present me with a newspaper article or internet
story suggesting that Judge Briones was biased
against [Movant].   Although I fight very hard for
my clients and will take on a federal judge if it is
necessary and if I have a valid reason to do so, at
that time I did not have a valid reason to move to
recuse Judge Briones.   I have reviewed
[Movant's] one-page document attached to his
§ 2255 motion, entitled "MexaBlog" and dated
July 16, 2009-which [Movant] claims is a partial
translation in English of what appeared "in a
Mexican newspaper."   Prior to his § 2255 motion,
[Movant] never brought this document to my

attention.[66]

Significantly, Movant did not question Judge Briones's impartiality at his trial or during his direct appeal; he first raised the issue in his instant § 2255 Motion.   Based on the timing of the events described above, it appears unlikely that Judge Briones knew of Movant's minor role in the investigation of his sister at the time of trial. Moreover, the Court sentenced Movant well below the advisory guidelines range because of the nature and circumstances of the offenses and the "history and characteristics of the defendant."[67]   These facts hardly suggest that Judge Briones's impartiality toward Movant might reasonably be questioned.

Furthermore, "to obtain collateral relief based on trial errors to which no contemporaneous objection was made, a convicted defendant must show both (1) 'cause' excusing his double procedural default, and

---

[66] *Id.* Ex. A7 Oct. 21, 2015, ECF No. 246-7 [hereinafter "Aff. Robert J. Perez"].

[67] Statement of Reasons 3, Aug. 25, 2010, ECF No. 98 (sealed).

(2) 'actual prejudice' resulting from the errors of which he complains."[68]
"[T]he cause standard require[s] the petitioner to show that 'some objective factor external to the defense'" prevented him from raising the claim at trial or on direct appeal.[69]   The prejudice standard requires the movant to demonstrate "that, but for the error, he might not have been convicted."[70]   "A mere possibility of prejudice will not satisfy the actual prejudice prong of the cause and prejudice test," and a movant must instead "'shoulder the burden of showing, not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'"[71]   "This cause and actual prejudice standard presents 'a significantly higher hurdle' than the 'plain error'

---

[68] *United States v. Frady*, 456 U.S. 152, 167–68 (1982).

[69] *Romero v. Collins*, 961 F.2d 1181, 1183 (5th Cir. 1992) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).

[70] *United States v. Guerra*, 94 F.3d 989, 994 (5th Cir. 1996), *as corrected* (Sept. 25, 1996).

[71] *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)).

standard that [the Fifth Circuit] appl[ies] on direct appeal."[72]   "The procedural-default rule . . . is a doctrine adhered to by the courts to conserve judicial resources and to respect the law's important interest in the finality of judgments."[73]

Movant does not point to an objective factor constituting cause, such as "interference by officials that makes compliance with the procedural rule impracticable."[74]   Assuming that Movant had actual knowledge of the FBI's investigation into Dolores Briones's conduct at the time of his trial, he cannot show "that the factual . . . basis for the claim was not reasonably available to counsel" at the time of his trial or appeal.[75]   Further, he has not demonstrated "that, but for the error, he might not have been convicted."[76]   Thus, the Court concludes that Movant is not entitled to relief on this claim.

---

[72] *Id.* at 232.

[73] *Massaro v. United States*, 538 U.S. 500, 504 (2003).

[74] *See Guerra*, 94 F.3d at 993.

[75] *See id.*

[76] See *id.* at 994.

## B.    Grounds Two and Three:   Missing Transcript

Movant also argues that adequate appellate review of his case was frustrated because the court reporter lost a full day of the trial transcript.[77]   He further notes that the prosecution sought and received a remand from the Fifth Circuit to give the trial court an opportunity to reconstruct the missing transcript, but the trial court merely summarized what it believed had occurred on that day.[78]   He asserts that his due process rights were violated and argues that "Fifth Circuit case law mandates a reversal for new trial."[79]

Movant raised these same arguments in his direct appeal, but the Fifth Circuit rejected them, and accepted the Court's reconstruction of the record:

> Here, following a limited remand to the district court to attempt to reconstruct the record, the district court considered evidence and other party submissions during two days of hearings.   Those hearings resulted in a reconstructed record that

---

[77] Letter to the Ct. 2–28.

[78] *Id.* at 5.

[79] *Id.* at 2.

-24-

> the district court found constituted a
> substantially verbatim account of the proceedings.
> "[A]bsent a showing of intentional falsification or
> plain unreasonableness," the district court's
> finding as to the accuracy of the reconstructed
> record "is conclusive." *United States v. Margetis,*
> 975 F.2d 1175, 1177 (5th Cir.1992); *see also*
> *United States v. Mori,* 444 F.2d 240, 246 (5th Cir.
> 1971). Because there has not been a showing of
> intentional falsification or plain
> unreasonableness, we accept the district court's
> findings and we further conclude that the record
> is sufficient for appellate review.[80]

"[I]ssues raised and disposed of in a previous appeal from an

original judgment of conviction are not considered in § 2255 Motions."[81]

Since the Fifth Circuit addressed Movant's claims on direct appeal and

resolved them on the merits, Movant may not re-litigate them through a

§ 2255 motion.[82]   Therefore, the Court will not consider these

arguments.

---

[80] *Shipley*, 546 F. App'x at 453–54.

[81] *United States v. Kalish*, 780 F.2d 506, 508 (5th Cir. 1986) (citing
*United States v. Jones,* 614 F.2d 80, 82 (5th Cir. 1980)).

[82] *United States v. Fields*, 761 F.3d 443, 463 n.12 (5th Cir. 2014), *as
revised* (Sept. 2, 2014) ("Challenges to issues decided on direct appeal are
foreclosed from consideration in a § 2255 motion.").

## C.    Ground Four:   "Gunwalking" Operation

Movant maintains that the prosecution falsely implied to the jury

that he was responsible for the Barrett .50 caliber rifle #20488's

presence in Mexico, when the Government itself allowed the weapon to

cross the border as a part of a "gunwalking" operation:[83]

> The Government failed to disclose that they
> allowed the gun at issue to be sold and trafficked
> to Mexico.   Then they stated in front of the jury
> at my trial that my gun ended up in Mexico.
> They implied to the jury and argued as if I had
> responsibility for it ending up in Mexico.   They
> knew this was false and they fabricated this to
> inflame the jury.[84]

---

[83] Letter to the Ct. 12–15; *See Terry v. Newell*, No.
CV-12-02659-PHX-DGC, 2013 WL 6048914, at *1 (D. Ariz. Nov. 15,
2013), *aff'd*, No. 14-15284, 2016 WL 3450293 (9th Cir. June 23, 2016)
("The alleged strategy of Operation Fast and Furious (the 'Operation')
was to allow illegally purchased firearms to transfer into the hands of
violent criminals [in Mexico], a practice known as 'gunwalking.'   Such
gunwalking, it was hoped, would result in the arrest of high ranking
members of the Mexican drug cartel who were expected to procure the
traced firearms from straw purchasers within the United States.   In
furtherance of the Operation, . . . the ATF Defendants allegedly hindered
other ATF agents and other law enforcement agencies from impeding the
firearms trafficking conspiracy.   Defendants intended to run
interference with other law enforcement agencies until Defendants could
obtain a wiretap which they believed would enable them to dismantle the
entire organization.").

[84] Letter to the Ct. 12.

He also contends that Agents conspired to obstruct justice when they asked an Agent without knowledge of the "gunwalking" operation to prepare the affidavit for a warrant to search Movant's residence:

> ATF wrote the affidavit in support of search warrant and could not have one of their [A]gents sign the affidavit because ATF knew of the gunwalking operation that walked the Barrett #20488 to Mexico . . . . The [USAO] brought in another [A]gent from another agency that had no knowledge of the gunwalking operation or the ATF's informant selling the Barrett and letting it walk.[85]

The government's withholding of defense-favorable evidence is unconstitutional under *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny.   "To establish a *Brady* violation, a defendant must prove that (1) the prosecution actually suppressed the evidence, (2) the evidence was favorable to the defense, and (3) the evidence was material."[86]   The Courts "do not, however, automatically require a new trial whenever 'a

---

[85] *Id.* at 16.

[86] *United States v. Bernard*, 762 F.3d 467, 480 (5th Cir. 2014), *cert. denied*, 136 S. Ct. 892 (2016), and *cert. denied sub nom.; Vialva v. United States*, 136 S. Ct. 1155 (2016).

combing of the prosecutors' files after the trial has disclosed evidence possibly useful to the defense but not likely to have changed the verdict.'"[87]   "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense."[88]   "The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.   A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome."[89]

Additionally, the prosecution's use of false or misleading evidence is unconstitutional pursuant to *Napue v. Illinois*, 360 U.S. 264 (1959), and its progeny.   "To establish a due process violation based on the government's use of false or misleading testimony, [a defendant] must

---

[87] *Giglio v. United States*, 405 U.S. 150, 154 (1972) (quoting *United States v. Keogh*, 391 F.2d 138, 148 (2nd Cir. 1968)).

[88] *United States v. Agurs*, 427 U.S. 97, 109–10 (1976) *holding modified by United States v. Bagley*, 473 U.S. 667, 682–83 (1985).

[89] *Bagley*, 473 U.S. at 682.

show that (1) the testimony in question was actually false; (2) the testimony was material; and (3) the prosecution had knowledge that the testimony was false."[90]

For the purpose of alleged due process violations under both *Brady* and *Napue*, "[t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence."[91]   Stated differently, the test is whether "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict."[92]

Movant speculates that the Government, through the USAO and ATF, allowed the Barrett .50 caliber rifle, #20488, which he sold to Deputy Sheriff Rodriguez, to cross the border into Mexico as a part of a

---

[90] *United States v. Fields*, 761 F.3d 443, 477 (5th Cir. 2014), *as revised* (Sept. 2, 2014), *cert. denied*, 135 S. Ct. 2803 (2015) (internal quotations marks and citation omitted).

[91] *Kyles v. Whitley*, 514 U.S. 419, 434 (1995).

[92] *Id.* at 435.

"gunwalking" operation.[93]   He adds that "[i]t wasn't until US Border

Patrol Agent Brian Terry was killed in December of 2010 that the ATF

gun walking operations became public knowledge.   This was eight

months after [Movant's] conviction."[94]

Even if Movant could demonstrate that the USAO and the ATF in

El Paso allowed the Barrett rifle to cross the border to suspected Mexico

gun traffickers as a part of the "gunwalking" operation—and Movant

musters no evidence to support this contention—Movant could not

demonstrate that such information would have been exculpatory or

material to his defense.   Notably, Movant was not charged with

unlawfully exporting a firearm to a foreign country.   His convictions

were based exclusively on his firearm dealings within the United States

without an FFL for several years; his lies on required gun-acquisition

forms in the United States about being the "actual buyer" of four

firearms; and his provision of a false and incomplete A&D book to

Agents.   None of the charges required that the Government prove that

---

[93] Letter to the Ct. 12.

[94] *Id.*

any of the firearms Movant acquired or sold were trafficked to or ended up in Mexico.   As the Fifth Circuit noted, "[t]he investigation into [Movant] began as an investigation into someone else," prompted by a trace of a Barrett .50 caliber rifle "seized by the Mexican military after a shootout."[95]   The Government's unopposed introduction of evidence that one of the firearms that Movant sold was recovered in Mexico supplied the reason for an ATF Agent to initially contact him.

In view of the foregoing, evidence of a "gunwalking" operation was neither favorable nor material to Movant's defense.   Evidence of a "gunwalking" operation would not have placed the whole case in such a different light as to undermine confidence in the verdict.   In short, Movant has not met any of the requirements for establishing a *Brady* or *Napue* violation.

### D.   Ground Five:   Obstruction of Justice

Movant also contends that Agents conspired to obstruct justice when they asked Senior Special Agent Benn, an agent without knowledge of the "gunwalking" operation, to prepare the affidavit for a

---

[95] *Shipley*, 546 F. App'x at 452–53.

warrant to search Movant's residence:

> ATF wrote the affidavit in support of search
> warrant and could not have one of their [A]gents
> sign the affidavit because ATF knew of the
> gunwalking operation that walked the Barrett
> #20488 to Mexico . . . . The [USAO] brought in
> another [A]gent from another agency that had no
> knowledge of the gunwalking operation or the
> ATF's informant selling the Barrett and letting it
> walk.[96]

"To discredit the warrant, the defendant must show that an affidavit contained a false statement that is the product of 'deliberate falsehood or of reckless disregard for the truth' and that the remaining truthful portion of the affidavit is insufficient to support a finding of probable cause."[97]   Movant does not dispute the fact that the Barrett rifle he sold to Deputy Sheriff Rodriguez ended up at the scene of a gunfight in Mexico.   Instead, he complains that the affidavit omits information exculpating him as someone who traffics guns into Mexico. The affidavit plainly shows, however, that the affiant did not predicate

---

[96] Letter to the Ct. 16.

[97] *United States v. Doggins,* 633 F.3d 379, 382 (5th Cir. 2011) (quoting *Moreno v. Dretke,* 450 F.3d 158, 169 (5th Cir. 2006)).

-32-

his assertion of probable cause on a suspicion that Movant trafficked firearms to Mexico.   The affidavit's concluding paragraph declares that "probable cause exists to believe" that what will be found at Movant's residence is evidence of his violation of specifically-enumerated federal criminal statutes concerning unlicensed dealing in firearms in the United States; causing a FFL dealer to maintain false records in the United States; false statements to government agents in the United States; and destruction, alteration, or falsification of records in a federal investigation in the United States—none of which focus on the trafficking or exportation of a firearm to Mexico.[98]

Prior to trial and on direct appeal, Movant had the opportunity to attack the search-warrant affidavit as containing materially false statements or omissions pursuant to *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978) but he did not.   Because Movant had "an opportunity for full and fair litigation of a Fourth Amendment claim" at trial and in a direct appeal, *Stone v. Powell*, 428 U.S. 465, 482 (1976), bars collateral

---

[98] Resp. Ex. A6 (Aff. in Supp. of Search Warrant), Oct. 21, 2015, ECF No. 246-6.

review of his belated *Franks* claim.[99]

Even if not foreclosed by *Stone*, Movant's untimely *Franks* attack

does not survive § 2255's cause-and-prejudice standard for a

procedurally-defaulted claim, as Movant has not shown actual prejudice

or actual innocence, excusing his failure to raise the issue at trial or on

direct appeal.

### E.   Ground Six:   Prosecutorial Statements about Rifle Ending Up at Mexico Shoot-Out Scene

Movant further argues that the prosecutors intentionally lied to

the trial court and the jury in order to obstruct justice and convict an

innocent person.

> Not only did the United States fabricate a story
> that a former firearm of mine was used to kill a
> Mexican Army officer, the United States knew I
> had no idea that one of my former firearms ended
> up in Mexico.   I sold the firearm at issue to Luis
> Armando Rodriguez, who himself had no idea that
> the firearm ended up in Mexico.   Rodriguez took
> the firearm, consigned at Collector's Gun
> Exchange, had the gun store sell the firearm for

---

[99] *See Register v. Thaler*, 681 F.3d 623, 628 (5th Cir. 2012) ("[I]t is the existence of state processes allowing an opportunity for full and fair litigation of fourth amendment claims, rather than a defendant's use of those processes, that serves the policies underlying the exclusionary rule and bars federal habeas corpus consideration of claims under *Stone*.").

him while he was out of town, and had no idea
who took the gun into Mexico.   Indeed, ATF case
agent Frank Henderson testified I had no idea
what Rodriguez did with the firearm after I sold it
to him.[100]

Movant made the same claims on direct appeal, which the Fifth

Circuit rejected on the merits:

First among the numerous statements [Movant]
complains of are several references to one of the
firearms [Movant] sold having been found in
Mexico, at the scene of a shootout.   Those
statements related to evidence that was presented
at trial, and the evidence was relevant.   We do
not find plain error warranting reversal here.

Second, [Movant] complains that certain
statements made during the prosecutor's closing
statements were improper appeals to passion or
prejudice that were calculated to inflame the jury.
We disagree and find no plain error.

Third, [Movant] contends that the prosecutor
improperly vouched for the credibility of the
government's witnesses.   We read the trial
transcript differently and find no statements
plainly vouching for any witness's credibility.

In sum, we do not believe that any of the
challenged statements were improper ones
sufficient to warrant reversal under plain error

---

[100] Letter to the Ct. 18.

-35-

review.[101]

As the Court discussed above, "issues raised and disposed of in a previous appeal from an original judgment of conviction are not considered in § 2255 Motions."[102]   Since the Fifth Circuit addressed and rejected Movant's claims on direct appeal, Movant may not re-litigate them through a § 2255 motion.[103]

## F.   Grounds Seven and Eight:   Denial of Access to Journals

Movant claims that the Government destroyed exculpatory evidence, specifically his personal journals, which showed that he contacted ATF Agents to ensure that his purchases and sales of weapons complied with federal laws.   Movant explains "[t]hese journals were taken during the execution of a search warrant.   The [G]overnment maintained them and introduced them as evidence at [Movant's]

---

[101]   *Shipley*, 546 F. App'x at 457–58.

[102]   *United States v. Kalish*, 780 F.2d 506, 508 (5th Cir. 1986) (citing *United States v. Jones*, 614 F.2d 80, 82 (5th Cir. 1980)).

[103]   *United States v. Fields*, 761 F.3d 443, 463 n.12 (5th Cir. 2014), *as revised* (Sept. 2, 2014).

trial."[104]   He seems to suggest that sometime after his trial and appeal, he made a request to an unspecified person "to review" the material "for exculpatory information"; an unnamed representative of "the government stated that they could not find them" or "claims they have lost them"; but he did locate "a photocopy of certain pages the prosecution used at trial that were entered as evidence."[105]   He maintains that the Government violated his due process rights by destroying his journals.

Movant did not raise these claims at trial or on appeal.   "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'"[106]

Movant does not point to an objective factor constituting cause for his failure to raise his claims at trial or on direct appeal, such as

---

[104] Letter to the Ct. 19.

[105] *Id.*

[106] *Bousley v. United States*, 523 U.S. 614, 622 (1998)

"interference by officials that makes compliance with the procedural rule impracticable."[107]   Because (1) Movant concedes that he created the journals, (2) he was aware they had been seized through a search warrant, (3) they were used against him at trial, and (4) he did not object to his lack of access to them at his trial or on direct appeal,[108] Movant cannot show "that the factual . . . basis for the claim was not reasonably available to counsel" at the time of his trial or appeal.[109]   Further, he has not demonstrated "that, but for the error, he might not have been convicted."[110]   Therefore, Movant is not entitled to § 2255 relief on this claim.

## G.   Ground Nine:   Ineffective Assistance of Counsel

Finally, Movant alleges four instances of constitutionally ineffective assistance by his trial counsel.   First, Movant argues that

---

[107] *See United States v. Guerra*, 94 F.3d 989, 993 (5th Cir. 1996), *as corrected* (Sept. 25, 1996).

[108] Letter to the Ct. 19.

[109] *See United States v. Guerra*, 94 F.3d 989, 993 (5th Cir. 1996), *as corrected* (Sept. 25, 1996).

[110] *Id.* at 994.

his trial counsel failed to inform Movant of his professional and personal relationship with a defense witness.   Second, Movant claims that his counsel engaged in an ethical violation when he showed Movant sealed impeachment information relating to a prosecution witness, but maintained he could not use the information in court.   Third, Movant faults his counsel for failing to call the Agent who signed the affidavit in support of the search warrant.   Finally, Movant contends his counsel's performance was deficient because he refused to follow Movant's instruction to ask the trial judge to recuse himself.

The United States Constitution's Sixth Amendment guarantees an accused the right to the assistance of counsel for his defense in all criminal prosecutions.[111]   Moreover, "the right to counsel is the right to the effective assistance of counsel."[112]   "[I]neffective assistance claims are ordinarily brought for the first time on collateral review because of the difficulty of compiling an adequate record by the time of direct

---

[111] U.S. Const. amend. VI.

[112] *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970).

-39-

appeal."[113]   To merit relief on an ineffective assistance of counsel claim,

a movant must demonstrate both (1) that his "counsel's performance was

deficient," and (2) that "the deficient performance prejudiced the

defense."[114]   A failure to establish either prong of this test requires a

finding that counsel's performance was constitutionally effective.[115]

Movant posits that an "ethical conflict" prevented his attorney

from adequately questioning defense witness Paul Lee, the FFL dealer

at Collector's Gun Exchange in El Paso.   He suggests that his counsel

had a personal and professional relationship with Lee. [116]   He claims

that his counsel refused to ask Lee about the receipt for the sale of a

---

[113] *United States v. Gaudet*, 81 F.3d 585, 589 n.5 (5th Cir. 1996).

[114] *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994) (summarizing the *Strickland* standard of review).

[115] *See Strickland*, 466 U.S. at 687 ("Unless a defendant makes both showings, it cannot be said that the conviction or . . . sentence resulted from a breakdown in the adversary process that renders the result unreliable."); *Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim."); *Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one.").

[116] Letter to the Ct. 22.

Barrett .50 caliber rifle to "the Mexican gun trafficker."[117]

"Prejudice is presumed with respect to a defendant's ineffective assistance of counsel claim if the defendant demonstrates that his counsel actively represented conflicting interests, and that the actual conflict of interest adversely affected counsel's performance."[118]   As discussed above, the grand jury did not indict Movant for illegally exporting firearms to Mexico.   Questioning Lee about his role in the movement of firearms to Mexico would have been irrelevant to Movant's guilt or innocence.   Under these circumstances, Movant cannot demonstrate that his counsel's refusal to question Lee about the sale of the Barrett to an international gun trafficker prejudiced his defense.

Movant also claims that his counsel engaged in an "ethical violation" when he showed Movant sealed impeachment information relating to a prosecution witness, after which Movant's attorney allegedly remarked that, because the information was sealed, his

---

[117] *Id.*

[118] *United States v. Garcia*, 77 F.3d 857, 860 (5th Cir. 1996).

attorney could not use it during the trial.[119]   The information concerned the witness's involvement in stealing military night vision equipment, thermal imaging equipment, weapons, and other equipment.   However, contrary to Movant's assertion, the record shows that counsel did, in fact, use the information to impeach the witness.[120]   Thus, Movant has failed to establish that his counsel's performance was either deficient or prejudiced the defense.

Movant further claims that his counsel failed to subpoena Senior Special Agent Benn, the agent who signed the affidavit for the search warrant.   According to Movant, "[t]here were several legal issues [that he and his defense counsel] intended to question [the Agent] about on the search warrant that were not allowed because [Movant's] attorney failed to subpoena him."[121]

"'[C]omplaints of uncalled witnesses are not favored, because the

---

[119] Letter to the Ct. 23.

[120] Trial Tr., Vol 4, 179–183, 187–188, 211–232, 255–256, 258–259, 262, 264, Dec. 3, 2010, ECF No. 120.

[121] Letter to the Ct. 12.

-42-

presentation of testimonial evidence is a matter of trial strategy, and because allegations of what a witness would have testified are largely speculative.'"[122]   "[T]o prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense."[123]   Movant has failed to set out the content of the testimony or show that it would have assisted his cause.   Consequently, Movant's arguments regarding counsel's failure to call Special Agent Benn fail to demonstrate ineffective assistance of counsel.

Finally, Movant asserts that his counsel's performance was constitutionally deficient for refusing his instruction to ask the trial judge to recuse himself.

The Constitution requires disqualification of a judge "only in the

---

[122] *United States v. Cockrell*, 720 F.2d 1423, 1427 (5th Cir. 1983) (quoting *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978)).

[123] *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009).

most extreme of cases," such as when a party shows that a judge has a "direct, personal, substantial, pecuniary interest in reaching a conclusion against him in his case."[124]   Conflicts arising from a judge's familial relationships normally do not mandate recusal.[125]

Here, FBI Agents first notified the trial judge's sister, Dolores Briones, of OPP during a phone conversation on May 18, 2007.[126]   The jury found Movant guilty approximately three years later on April 14, 2010, but Dolores Briones did not learn that prosecutors would charge her with a federal crime until November 21, 2011.[127]   Moreover, the principal case Agent in charge of the OPP investigation claimed that Movant's role in the operation was minimal and did not involve Dolores Briones,[128] and Movant's attorney maintained that he did not know, at

---

[124] *Public Citizen, Inc. v. Bomer*, 274 F.3d 212, 217 (5th Cir. 2001) (internal citation omitted).

[125] *Richardson v. Quarterman*, 537 F.3d 466, 476 (5th Cir. 2008).

[126] Aff. Julio Cordero.

[127] *Id.*

[128] *Id.*

-44-

the time he represented Movant, that the FBI was investigating Dolores Briones.[129]

Under these circumstances, the trial judge did not "face a significant temptation to be biased against" Movant.[130]   "He did not stand to gain personally or professionally" upon Movant's conviction.[131] Whether such a result may have been pleasing to members of the judge's family "is not the type of 'possible temptation' that would lead the average judge 'not to hold the balance nice, clear and true'" in violation of due process.[132]   A motion to recuse would have been unavailing. Consequently, Movant cannot show that his counsel's performance was either deficient or prejudiced his cause.   Accordingly, the Court finds that Movant is not entitled to § 2255 relief on his ineffective-assistance claims.

---

[129] Aff. Robert J. Perez.

[130] *See Richardson*, 537 F.3d at 476.

[131] *See id.*

[132] *Id.* (internal citation omitted).

## IV.   EVIDENTIARY HEARING

A motion brought pursuant to § 2255 may be denied without a hearing if the motion, files, and records of the case conclusively show that the defendant is not entitled to relief.[133]   The record in this case is adequate to dispose fully and fairly of Movant's claims.   The Court need inquire no further on collateral review and an evidentiary hearing is not necessary.

## V.   CERTIFICATE OF APPEALABILITY

A petitioner may not appeal a final order in a habeas corpus proceeding "[u]nless a circuit justice or judge issues a certificate of appealability."[134]   A certificate of appealability "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."[135]   In cases where a district court rejects a

---

[133] *United States v. Drummond*, 910 F.2d 284, 285 (5th Cir. 1990) ("Faced squarely with the question, we now confirm that § 2255 requires only conclusive evidence–and not necessarily direct evidence–that a defendant is entitled to no relief under § 2255 before the district court can deny the motion without a hearing.").

[134] § 2253(c)(1)(B).

[135] *Id.* § 2253(c)(2).

petitioner's constitutional claims on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."[136]   To warrant a grant of the certificate as to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."[137]   Here, Movant's Motion fails because he has not made a substantial showing of the denial of a constitutional right. Accordingly, the Court finds it should deny Movant a certificate of appealability.

## VI.   CONCLUSION

For the reasons stated above, the Court concludes it should deny Movant's Motion and dismiss his civil cause.   The Court further

---

[136] *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (applying *Slack* to a certificate of appealability determination in the context of § 2255 proceedings).

[137] *Slack*, 529 U.S. at 484.

concludes that Movant is not entitled to a certificate of appealability.
The Court, therefore, enters the following orders:

**IT IS ORDERED** that Movant John Thomas Shipley's *pro se*
"motion under 28 U.S.C. § 2255 to vacate, set aside, or correct a
sentence" (ECF No. 233) is **DENIED** and his civil cause is **DISMISSED
WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Movant John Thomas Shipley
is **DENIED** a **CERTIFICATE OF APPEALABILITY**.

**IT IS FINALLY ORDERED** that the District Clerk shall **CLOSE**
this **CASE**.

SIGNED this _____21_____ day of **November, 2016**.

_____
PHILIP R. MARTINEZ
UNITED STATES DISTRICT JUDGE